# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Anne Robinson,<br><br>          Plaintiff,<br><br>v.<br><br>Pentagroup Financial, LLC, Will F. Thompson, and Steve Ted Bryant,<br><br>          Defendants. | Civil No. _____<br><br><br>**COMPLAINT**<br><br><br>**JURY TRIAL DEMANDED** |

## JURISDICTION

1.    Jurisdiction of this Court arises under 28 U.S.C. § 1331 and pursuant to 15 U.S.C. § 1692k(d).

2.    This action arises out of Defendants' violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq. ("FDCPA") in their illegal efforts to collect a consumer debt.

3.    Venue is proper in this District because the acts and transactions occurred here, Plaintiff resides here, and Defendants transact business here.

## PARTIES

4.    Plaintiff Anne Robinson is a natural person who resides in the City of St, Paul, County of Ramsey, State of Minnesota, and is a "consumer" as that term is defined by 15 U.S.C. § 1692a(3).

5.    Defendant Pentagroup Financial, LLC (hereinafter "Defendant Pentagroup") is a foreign limited liability company and a collection agency operating from an address of 5959 Corporate Drive, Suite 1400, Houston, TX 77036 and is a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6).

6.    Defendant Will F. Thompson (hereinafter "Defendant Thompson") is a natural person employed by Defendant Pentagroup as a collection agent and is a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6).

7.    Defendant Steve Ted Bryant (hereinafter "Defendant Bryant") is a natural person employed by Defendant Pentagroup as a collection agent and is a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6).

## FACTUAL ALLEGATIONS

8.    On or around December 2006, Plaintiff incurred a financial obligation that was primarily for personal, family or household purposes, that went into default for late payment, and is therefore a "debt" as that term is defined by 15 U.S.C. § 1692a(5), namely, a Home Design Sewing/GE Money Bank debt in the approximate amount of $2,000.00, which was used by Plaintiff to make personal purchases of food, clothing, and shelter-related items.

9.    Sometime in or around 2009, the Plaintiff's alleged debt was consigned, placed or otherwise transferred to Defendants for collection from Plaintiff,

when thereafter Plaintiff started receiving collection communications from Defendants in an attempt to collect this alleged debt.

### Collection Begins

10. On or about April 2, 2009, Plaintiff received a letter from Defendant Pentagroup by U.S. Mail in an effort to collect this debt, which was a "communication" in an attempt to collect a debt as that term is defined by 15 U.S.C. § 1692a(2).

11. Defendant Pantagroup's letter stated that the alleged debt had been sold or transferred to CACH, LLC who was now the new creditor on the account.

12. Defendant Pentagroup's letter further stated that they had been hired to contact Plaintiff regarding the referenced debt, which was now stated to be $1,409.90.

### Payment Agreement

13. On or about May 13, 2009 Plaintiff and her credit counselor contacted Defendant Pentagroup to inquire into the possibility of a settlement on the debt.

14. Plaintiff, through her credit counselor, and Defendant Thompson agreed to settle the debt in the amount of approximately $711.04.

15. Plaintiff and Defendant Thompson agreed that, as part of the settlement, Plaintiff would make two payments each in the amount of $355.52.

16.   Plaintiff's first payment would be made immediately with a check by phone.

17.   The second payment in the amount of $355.52 would be made on or about June 12, 2009.

18.   Plaintiff, per the agreement, made her payment with a check by phone using check number 6754.

19.   Thereafter, Plaintiff agreed to the June 12, 2009 payment with another check by phone withdrawal using check number 6755.

### *May 20, 2009 Settlement Agreement Letter*

20.   On or about May 20, 2009, Plaintiff received a letter via U.S. Mail from Plaintiff Pentagroup memorializing the agreement made on May 13, 2009 which was a "communication" in an attempt to collect a debt as that term is defined by 15 U.S.C. § 1692a(2).

21.   This agreement stated that the current creditor had authorized Defendant Pentagroup to offer a mutli-part settlement of the debt

22.   The terms stated that the first payment would be due on May 20, 2009 in the amount of $355.52.

23.   This payment was made, via check by phone, during the May 13, 2009 call with Defendant Thompson.

24.   The terms further stated that the second payment would be due on June 12, 2009, again in the amount of $355.52.

25.     Plaintiff's May 13, 2009 payment cleared her bank on or about May 28, 2009

### *June 12, 2009 Payment*

26.     After Plaintiff's May 28 payment, Plaintiff checked regularly with her bank to make sure the second and final check by phone cleared.

27.     Per the agreement as more fully described above, Defendant Pentagroup was to apply the second payment on June 12, 2009 using check number 6755 as authorized during the May 13, 2009 call.

28.     On or about June 30, Plaintiff began to get anxious about her agreement.

29.     Plaintiff had the funds in her account but Defendants had not made the agreed upon withdrawal.

30.     Thereafter, Plaintiff contacted her consumer credit counselor for advice on how to proceed with Defendants with regard to the settlement agreement.

### *July 29th Payment Conversation*

31.     On or about July 29, 2009 Plaintiff and her credit counselor contacted Defendant Pentagroup to inquire as to the delay in processing the June 12, 2009 payment as per the agreement.

32.     Plaintiff and her credit counselor spoke with Defendant Thompson.

33.     Plaintiff and her credit counselor inquired into the delay in processing Plaintiff's final payment per their agreement.

34. Defendant Thompson explained that the second payment had been deleted from their system.

35. Defendant Thompson then stated that he would place Plaintiff and her credit counselor on hold to find out why the second payment had been deleted.

36. After a few minutes, Defendant Thompson returned to the phone stating that the settlement offer was no longer available.

37. Defendant Thompson stated that Defendant Pentagroup had received a call from Plaintiff cancelling payment.

38. Plaintiff explained to Defendant Thompson that she made no such call.

39. Defendant Thomas then stated that the Defendants knew that Plaintiff had filed a lawsuit.

40. Plaintiff was perplexed by Defendant Thompson's statement regarding a lawsuit.

41. Defendant Thompson again stated that settlement was no longer available, only payment in full.

42. Defendant Thompson then stated that the debt has not been forward to his office where Plaintiff could face legal action.

43. Plaintiff and her credit counselor again stated that Plaintiff made no call to Defendants cancelling payment.

44. Thereafter, Defendant Thompson transferred the call to Defendant Bryant.

45.    Defendant Bryant, who was furious, vociferously stated that Defendant's client would not accept the already agreed upon settlement.

46.    Defendant Bryant than intimated that since Plaintiff had party been party to a lawsuit, Plaintiff had plenty of money to pay the full amount and not the agreed upon settlement.

47.    Defendant Bryant became furious and refused to speak to Plaintiff's credit counselor insisting again that his client would not longer accept settlement.

48.    Defendant Bryant then stated that he would only speak to Plaintiff and demanded that she pick up the phone.

49.    Plaintiff stated that her credit counselor was present at Plaintiff's request.

50.    Defendant Bryant again demanded that Plaintiff pick up the phone.

51.    Plaintiff picked up the phone to speak to Defendant Bryant in private as he shouted insults about Plaintiffs credit counselor.

52.    Plaintiff further stated that she would discontinue the conversation if Defendant Bryant did not cease making rude, inappropriate and unprofessional comments about her credit counselor.

53.    Defendant Bryant then stated that for "whatever reason the check did not post" or words to that effect.

54.    Defendant Bryant then stated that Pentagroup now owned the debt and they would only accept payment in full.

55.  Plaintiff then explained that she had been, and still was, prepared to make the second payment as per the agreement.

56.  Defendant Bryant told Plaintiff that this was not an option.

57.  Defendant Bryant again stated that Plaintiff's only option now was payment in full.

58.  Plaintiff again explained that she did not cancel any payment with Defendants.

59.  Plaintiff explained that she and Defendants had an agreement.

60.  Plaintiff further stated that the cancellation of the payment agreement by Defendants was not her fault or her doing.

61.  Plaintiff then stated she didn't know what to do.

62.  Defendant Bryant then screamed into the phone, "HERE, LET ME HELP YOU!" or words to that effect.

63.  Thereafter, Defendant Bryant abruptly slammed the phone down hanging up on Plaintiff.

64.  As result of the above conduct, Plaintiff thereafter contacted her bank to cancel check number 6755 because she was worried that Defendants would try to withdraw more than the agreed upon amount per the May 13, 2009 agreement.

65.  This call between Defendant Thompson, Defendant Bryant and Plaintiff was a collection communication in violation of numerous and multiple provisions of

the FDCPA, including but not limited to 15 U.S.C. §§ 1692d, 1692d(2), 1692e, 1692e(2), 1692e(10), and 1692f, amongst others.

### *Summary*

66.  The above-detailed conduct by Defendants, of harassing Plaintiff in an effort to collect this debt was a violation of numerous and multiple provisions of the FDCPA, including but not limited to all of the above-mentioned provisions of the FDCPA.

67.  Plaintiff has suffered actual damages as a result of these illegal collection communications by these Defendants in the form of anger, anxiety, emotional distress, fear, frustration, upset, humiliation, embarrassment, amongst other negative emotions.

### *Respondeat Superior Liability*

68.  The acts and omissions of Defendant Thompson and Defendant Bryant, employed as agents by Defendant Pentagroup who communicated with Plaintiffs as more further described herein, were committed within the time and space limits of their agency relationship with their principal, Defendant Pentagroup.

69.  The acts and omissions by Defendant Thompson and Defendant Bryant were incidental to, or of the same general nature as, the responsibilities these agents

were authorized to perform by Defendant Pentagroup in collecting consumer debts.

70.  By committing these acts and omissions against Plaintiff, Defendant Thompson and Defendant Bryant were motivated to benefit their principal, Defendant Pentagroup.

71.  Defendant Pentagroup is therefore liable to Plaintiff through the Doctrine of Respondeat Superior for the intentional and negligent acts, errors, and omissions done in violation of federal law by its collection employees, including but not limited to violations of the FDCPA in their attempts to collect this debt from Plaintiff.

## TRIAL BY JURY

72.  Plaintiff is entitled to and hereby respectfully demands a trial by jury.  US Const. amend. 7.  Fed.R.Civ.P. 38.

## CAUSES OF ACTION

### COUNT I.

### VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT

### 15 U.S.C. § 1692 et seq.

73.  Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

74.     The foregoing intentional and negligent acts and omissions of each and every Defendant constitute numerous and multiple violations of the FDCPA including, but not limited to, each and every one of the above-cited provisions of the FDCPA, 15 U.S.C. § 1692 et seq.

75.     As a result of each and every Defendant's violations of the FDCPA, Plaintiff is entitled to actual damages pursuant to 15 U.S.C. § 1692k(a)(1); statutory damages in an amount up to $1,000.00 pursuant to 15 U.S.C. § 1692k(a)(2)(A); and, reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1692k(a)(3) from each and every Defendant herein.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays that judgment be entered against each and every Defendant:

## COUNT I.

## VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT

## 15 U.S.C. § 1692 et seq.

- for an award of actual damages pursuant to 15 U.S.C. § 1692k(a)(1) against each and every Defendant and for Plaintiff;

- for an award of statutory damages of $1,000.00 pursuant to 15 U.S.C. §1692k(a)(2)(A) against each and every Defendant and for Plaintiff;

- for an award of costs of litigation and reasonable attorney's fees pursuant to 15 U.S.C. § 1692k(a)(3) against each and every Defendant and for Plaintiff;

Dated: November 19, 2009         Respectfully submitted,

**WHEATON LAW GROUP, PLLC**

By:  **s/Christopher S. Wheaton**
Christopher S. Wheaton, Esq.
Attorney I.D.#0389272
2021 East Hennepin Avenue, Suite 195
Minneapolis, Minnesota 55413-2700
Telephone:  (612) 379-3191
Facsimile: (612) 605-2102
cswheaton@wheatonlawgroup.com

csw/kw         **Attorney for Plaintiff**

VERIFICATION OF COMPLAINT AND CERTIFICATION

STATE OF MINNESOTA          )
                            ) ss
COUNTY OF HENNEPIN          )

Plaintiff Anne Robinson, having first been duly sworn and upon oath, deposes and says as follows:

1. I am a Plaintiff in this civil proceeding.
2. I have read the above-entitled civil Complaint prepared by my attorneys and I believe that all of the facts contained in it are true, to the best of my knowledge, information and belief formed after reasonable inquiry.
3. I believe that this civil Complaint is well grounded in fact and warranted by existing law or by a good faith argument for the extension, modification, or reversal of existing law.
4. I believe that this civil Complaint is not interposed for any improper purpose, such as to harass any Defendant(s), cause unnecessary delay to any Defendant(s), or create a needless increase in the cost of litigation to any Defendant(s), named in the Complaint.
5. I have filed this civil Complaint in good faith and solely for the purposes set forth in it.
6. Each and every exhibit I have provided to my attorneys which has been attached to this Complaint is a true and correct copy of the original.
7. Except for clearly indicated redactions made by my attorneys where appropriate, I have not altered, changed, modified, or fabricated these exhibits, except that some of the attached exhibits may contain some of my own handwritten notations.

_____
Anne Robinson

Subscribed and sworn to before me
this 19th day of November, 2009.

_____
Notary Public

CHRISTOPHER SEAN WHEATON
NOTARY PUBLIC - MINNESOTA
MY COMMISSION EXPIRES 01/31/2012